## Chesapeake & Ohio Railway Company v. Dixon.

(Decided February 2, 1926.)

### Appeal from Lawrence Circuit Court.

1. Master and Servant—Section Foreman had Duty to "Flag Around the Curve," where Trains Could Not be Seen.—Under rule of railroad, requiring motor cars, when it was impracticable to obtain information as to trains, to observe extreme caution, it was sectionforeman's duty to "flag around the curve," where trains could not be seen, by sending a flagman ahead.

2. Master and Servant—Whether Section Man Assumed Risks of Operating Motorcar Around Curve Without Flagman Held for Jury. —Whether risks of dangers incident to negligence of foreman in operating motorcar around curve without a flagman, in violation of rule, were assumed by section hand, held for jury.

3. Master and Servant—Servant Entitled to Time and Opportunity to Complain of Danger.—A servant, after learning of risk of danger, is entitled to time and opportunity for making complaint, before he can be charged with having assumed the risk.

4. Master and Servant—Employe May Assume Employer will Not Subject Him to Extraordinary Risks.—An employe has the right to assume that his employer will not subject him to extraordinary risks and hazards while performing his duty, and, unless such risks and hazards are so apparent or great as to cause a man of ordinary prudence to see and appreciate them, and try to avoid them, negligence of the employer will render him liable.

5. Master and Servant—Instruction that, if Section Man Knew of Practice Not to Flag Around Curve, and Acquiesced, he Could Not Recover, Approved.—Instruction that, if section man knew of custom or practice in operating motorcar not to flag around curve where collision occurred, and acquiesced in manner of operation and speed of motorcar immediately before the accident, he could not recover because of failure to flag at time of accident, would have been proper.

6. Appeal and Error—Damages—Refusal of Instruction that Employe, Under Federal Employers' Liability Act, could Recover Only Present Cash Value of Future Earnings, Held Reversible Error.— In action under. federal Employers' Liability Act (U. S. Comp. Stats., sections 8657, 8665), for injuries to a section man, refusal of instruction that plaintiff was only entitled to recover present cash value of his future earnings was error, and required reversal.

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

JOHN W. WOODS and J. W. HINKLE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The judgment in this case for $25,000.00 for personal injury to appellee, Dixon, is assailed by the railroad company on this appeal as unwarranted and contrary to the law because it violated no duty it owed appellee, Dixon, and therefore was guilty of no culpable negligence, and if there was negligence on the part of the section foreman in failing to flag around the curve before the collision which brought about the injury of appellee, Dixon, the latter assumed the risk of danger from such failure on the part of the section foreman and is for that reason not entitled to recover against the company; and further, appellee assumed the risk of any and all danger arising from the methods of operation of the section car employed by the section foreman, and assumed the risk of danger from the personal negligence of the foreman and is, therefore, not entitled to recover.

The accident occurred about three p. m. on July 28, 1923, while appellee, Dixon, with twelve other section men were riding a motor car on the tracks of appellant company from their place of work up the line towards their tool house, where they expected to store their car and tools and quit for the day. There was a misty rain falling and the weather was disagreeable; for some hours the men had been at work in this; about two o'clock in the afternoon the foreman gave orders to the men, including appellee, Dixon, to load up the tools on the car and head it towards the tool house, but did not say to what point he was going, or whether he had decided to quit for the day. In obedience to the order of the foreman, the car was placed on the track and the tools loaded.

The men took their places upon the car, the foreman telling appellee, Dixon, to take a seat on the front of the car so that he might watch the rails of the track to see if there were any defects therein, and in case there were to halt the car and let the repairs be made. The section foreman had charge of the crew and operated the motor; they were driving along at fifteen or twenty miles an hour, according to some of the evidence. On their way towards the tool house they had to pass Ben Bowe curve. This curve passed around a hill or knoll on which at the time grew a lot of vegetation and some trees. In the curve on the left of the track was a cut about four feet high and on top of the bank were weeds and grass three or four feet high, making it impossible for one on a hand car to see around the curve so as to tell what was approaching from the opposite direction. Near the point where the curve commenced was a switch connection to which was attached a track running almost parallel with the main track for several hundred feet. Near this switch point was a switch stand on which was situated a signal light. This light burned oil and required filling once each day up to about the time of the accident. The switch point had been out of order and had necessitated constant attention from the section crew.

While operating the motor car up the track as above stated another motor car, operated as special train No. 151, carrying a number of officials of the railroad, came down the track and around the curve and collided with the motor car on which the section crew was riding, killing the foreman, Rowe, and injuring several others, including appellee, Dixon. Dixon's legs, which were hanging off the car on the front, were caught between the colliding cars and so mashed that one of his legs had to be amputated. His spinal column was broken and several sections of the bone near the caccyx were so injured as to require removal. He was cut in the head and bruised about the body in many places so that he is now a physical wreck, totally incapacitated, as the evidence shows, to support himself or his family. Moreover, he suffers great pain constantly from his injuries and is unable to sleep. His bowels are paralyzed and he requires constant attention. At the time of his injury and for some years before he had been earning from $75.00 to $100.00 per month on an average; at the time of the accident he was about thirty-seven years of age and in good health.

This suit was based upon the negligence of the section foreman, Rowe, appellee Dixon making the following contentions:

"First: Mart Rowe, the foreman, was negligent in not stopping his car and flagging around Ben Bowe curve.

"Second: Mart Rowe, the foreman, was negligent in operating his car at a greater speed than 20 miles per hour as he went on to Ben Bowe curve.

"Third: The operatives of car No. 151 were negligent in failing to comply with rules to flag around doubtful places and not to exceed a speed of 20 miles pe rhour.

"Fourth: The operatives of car No. 151 were negligent irrespective of the rules governing the operation of motor cars in failing to reduce speed at Ben Bowe curve and give signal of their approach around said curve."

He further asserts that he did not assume the risk of Rowe, his foreman, in failing to flag around Ben Bowe curve, for the reason he did not know the foreman was going to or around the curve in time to object or complain and was in effect assured by the foreman that there was no danger ahead.

Appellant company denies each of the foregoing propositions and insists that appellee, Dixon, did assume all the risks of danger incident to the manner in which Rowe, the foreman, operated the car around Ben Bowe curve, and says that it was the custom of the foreman, with the acquiescence of appellee, to disregard the rule of the company requiring a motor car to flag around a curve where the track could not be seen far enough ahead to protect those on the car from cars traveling in the opposite direction. The company also complains that the instructions given by the court to the jury were erroneous, and especially does it complain of the failure of the instruction upon the measure of damages to direct the jury to find the present cash value of the future earnings of appellee, Dixon, and to limit its finding to such cash value. Incidentally it says that the verdict is grossly excessive, but we are of opinion that if it is possible for one of the age of appellee, Dixon, earning the wages which he had been receiving at the time of his injury, to merit a verdict of $25,000.00 it would be hard to see

how appellant could hope to disturb this verdict upon the grounds of excessiveness, all the facts and circumstances considered. However, as the judgment must be reversed for other reasons it is not necessary to pass upon that question, and we expressly reserve it.

The company had adopted, long before the happening of the accident, certain rules governing the operation of motor cars on its tracks, some of which, especially Nos. 10 and 13, have more or less application to the facts of this case. Rule No. 10 reads as follows:

"When impracticable to communicate with train dispatcher, or to obtain information in regard to trains, extreme ·precaution must be observed and unless the track is seen or known to be clear, movement must be made under full flag protection."

Rule 13 reads:

"Cars must not exceed a speed of 8 miles per hour when passing through yards, over switches, or through interlocking, over frogs, railroad, highway or farm crossings at grade. At all other points, hand cars are restricted to ten miles per hour and motor cars to twenty miles per hour. When a train moving on opposite track is met, motor and hand cars will reduce speed to six miles per hour and proceed carefully at this speed until the train has passed."

Undoubtedly rule 10 was intended to cover a situation similar to the one that existed immediately before the happening of the accident in which ·Dixon was injured. Both motor cars were on the curve with an embankment on the inside of the curve so high as to prevent persons on one car from seeing those on the other and from seeing the car as they approached. The evidence also shows that it was impracticable to communicate with the dispatcher or to otherwise obtain information in regard to trains. It, therefore, became the duty of the foreman of the section gang in charge of the motor car to exercise extreme precaution in going around Ben Bowe curve, and in order to do so it was his duty to flag around the curve, by which it is meant it was his duty to send a man ahead with a flag to keep a watch out for trains coming in the opposite direction and to give information of the presence of such oncoming trains to those on the motor, and also to indicate to the persons in charge

of the oncoming train, if any, the presence of the motor car on the track.

This action is prosecuted under the Federal Employers' Liability Act, and it has been held pursuant to that act that a section foreman and members of his crew are fellow servants.

Relying upon that holding the railroad company now insists that the negligence of Rowe, the foreman, was not equivalent to the negligence of a vice principal under our state law, but merely the negligence of a fellow servant, and that his negligence was not sufficient to support a cause of action in favor of appellee, Dixon, against the railroad.

The company also asserts that the operatives in charge of the motor car on which the officials were riding, and which was being operated as a special train No. 151, owed no duty to members of the section crew except to exercise ordinary care to avoid injury to them after the discovery of their peril. The trial court took this view of the matter and held that, inasmuch as that motor car was being operated as a special train under the control of the dispatcher, it did not come within rule 10 governing motor cars, and refused to submit that question to the jury. Of that ruling appellee, Dixon, at the time complained but has not prosecuted a cross-appeal and we need not further consider that contention except to say that the general rule seems to be that where a motor car or other such vehicle is being operated by the railroad company on a schedule under the direction of the dispatcher, it becomes a train within the meaning and purposes of the rule and is exempt from the operation of rules governing motor cars or hand cars. Central R. R. Co. v. Lindley, 151 S. W. 246; Railway v. Taylor, 20 S. W. 1083; Commonwealth v. Louisville & Eastern R. R. Co., 141 Ky. 583.

We cannot, however, agree with the contention of appellant company that the appellee has not shown negligence attributable to it, and for which it is liable in damages if the jury under proper instructions from the court should conclude that his injury is the direct and proximate result of such negligence and not the result of his sole negligence. If it be admitted that Rowe, the section foreman, was a fellow servant of appellee, Dixon, the company is liable if he did not assume the risks of danger incident to the manner of operation of the motor car em-

ployed by the foreman, and this depends, of course, upon whether Dixon knowingly mounted the car for the purpose of being carried by it under the control of the foreman around Ben Bowe curve at a speed greater than that allowed by the rule of the company and without complying with the conditions of rule 10 imposing the duty on the foreman to flag around such curves where the track is not clear, and appellee invokes the rule laid down in the case of Reed v. Director General, 258 U. S. 92:

> "In actions under the federal act, the doctrine of assumption of risk certainly has no application when the negligence of a fellow servant, which the injured party could not have foreseen or expected, is the sole, direct and immediate cause of the injury. To hold otherwise would conflict with the declaration of Congress that every common carrier by railroad, while engaging in interstate commerce, shall be liable to the personal representative of any employee killed while employed therein, when death results from the negligence of any of the officers, agents or employees of such carrier."

The facts in this case bring it within the rule laid down in the case of Long's Admr. v. Illinois Central Railroad Company, 68 S. W. 1095, where it was urged for the railroad that the intestate knew the train was late and overdue and took the risk. The appellant insisted that he acted under the orders of his foreman and had a right to presume that his superior would not order him to go ahead with the hand car if there was danger. The principle relied upon was that the servant may lawfully obey the orders of his employer, relying upon his superior knowledge and judgment. The court said:

> "Long had a right to rely on his superior knowledge and judgment as to the safety of proceeding with the hand car under the circumstances, unless the facts actually known to Long were such that a servant of ordinary prudence, situated as he was, would not have taken the risk, and this was a question for the jury. . . .
> "Long was simply riding on the hand car in obedience to the orders of his boss, who was taking him to the place of work, and for some reason was anxious to get there as quickly as he could."

In the case of Illinois Central Railroad Company v. McIntosh, 80 S. W. 496, it is said:

"A section hand assumes the risks incidental to riding on a hand car where ordinary care is used in its management, but he does not assume the risk incidental to the gross negligence of the section foreman in running the hand car. It is the duty of the section foreman in running the hand car not to expose his men to risks of collisions with trains, thus imperiling their lives, without exercising proper precautions for their safety. In the case before us he was running on the time of the freight train. He stopped at Boxtown and without taking any precautions for the safety of his men, instead of waiting there for the train to pass, went on until he met the train. Such conduct warranted the jury in finding him guilty of gross negligence, and while the section men assume all risks incidental to ordinary negligence on his part, the company is liable for his gross negligence."

The evidence shows that Rowe, the foreman, had directed appellee, Dixon, to keep his eye upon the track for defects as the motor car went along and that appellee was obeying orders and was watching the track at the time they approached Ben Bowe curve and up to an instant before the accident happened. He had no opportunity to look ahead. As they approached the point of the curve and near the point where the switch came to the main track, and also near the switch light, the foreman turned off the power and applied the brakes on the motor and allowed it to drift along at a slow rate on to the curve. Appellant with his eye on the track observed the slackening of the speed and that the power had been turned off, and from these facts and from the further fact that the crew had been stopping at that point almost every evening in order to fill the switch lamp with oil and to look about the defective switch point, concluded that the foreman was stopping the car at that point either to make repairs or to fill the switch lamp and did not pay any further attention for a few seconds while the car drifted slowly on to the curve, when suddenly and without warning from the foreman to appellee the power was again turned on and the car began to pick up; at that instant the car traveling in the opposite

direction was seen coming around the curve and the alarm was given. Appellee, Dixon, it appears from the evidence, had neither time nor opportunity to get off the car or to protect against the speed of the car coming around the curve after the car on which he was riding had been slowed down at the switch point and before starting up again and the happening of the accident. The rule is that a servant, after learning of the risk of danger, is entitled to time and opportunity for making complaint he can be charged with having assumed the risk. 26 Cyc. 1207; 30 S. W. 758; 65 Pac. 805. Moreover, an employe has the right to assume that his employer or boss will not subject him to extraordinary risks and hazards while performing his duty, and unless such risks and hazards are so apparent or great as to cause a man of ordinary prudence to see and appreciate them and try to avoid them, the negligence of the company will render it liable. In LaBatt on Master and Servant, vol. 3, page 3239, it is said that a servant does not necessarily become chargeable with assumed risk because he does not leave the employment immediately after he ascertains the existence of a dangerous defect. It would seem, therefore, that under the facts of this case it was for the jury to say whether appellee, Dixon, assumed the risks of danger incident to the negligence of the section foreman in operating the car around the curve in violation of rule 10.

Appellant company offered instruction "B," which reads:

"The court instructs you that if you shall believe from the evidence that it was the custom and practice in the operation of the motor car on which plaintiff was riding, not to flag around the curve described in the proof and known as the Ben Bowe curve, and that such custom or practice was known to the plaintiff, then plaintiff is not entitled to recover by reason of the failure to flag on the occasion of the accident,"

and insisted that the court erred to its great prejudice in not so instructing the jury. This instruction would not have been objectionable had there been added, in substance, the following: "Provided Dixon acquiesced in the manner of operation and speed of the car at the time the power was turned on at the curve and the car began to pick up speed immediately before the accident.'"

Appellee, Dixon, it is insisted, was only entitled to recover the present cash value of his future earnings. That is a rule applied by the courts under the Federal Employers' Liability Act. Appellant company offered such an instruction but it was refused by the court. In the case of L. & N. R. R. Co. v. Gayle, 204 Ky. 142, we said the situation requires the anticipation of future payments, and it is but just and fair that the verdict should be made upon the basis of their present value only C. & O. R. R. Co. v. Kelley, 241 U. S. 485. Several judgments have been reversed by this court for failure of the trial judge to give the present cash value instruction when requested by the defendant. Ilinois Central Railroad Company v. Skinner's Admr., 177 Ky 62; C. N. O. & T. P. Ry. Co. v. McWhorter, 210 Ky. 108. In the McWhorter case, *supra,* the instruction on the measure of damages was much the same as in this case, and we held that it was erroneous in that it did not require the jury to confine its award to the present cash value of the future earnings of the injured man, and directed that the court upon the next trial instruct the jury to award such damages "as will fairly represent the fair cash value of what he otherwise would have earned and has been or will be hereafter deprived of the capacity of earning by the wrongful act of the defendant, if any." This was in conformity to the rule laid down by the Supreme Court of the United States in the case of C. & O. Ry. Co. v. Kelley, 241 U. S. 485. On another trial the court will so instruct the jury. For this error the judgment is reversed for new trial not inconsistent with the views herein expressed.

Other questions made by appellant in view of what has been said require no separate consideration. Judgment reversed.