# Neal's Administrator v. Louisville & Nashville Railroad Company.

(Decided June 11, 1926.)

## Appeal from Estill Circuit Court.

Master and Servant—Car Repairman Injured while Using Jack that he had Twice Been Instructed Not to Use, and Claw Bar Instead of Handle, Held Guilty of Contributory Negligence (Federal Employers' Liability Act [U. S. Comp. Stats., Sections 8657, 8665]).—Car repairman injured while using jack that he had twice been instructed not to use, and in connection therewith using an iron claw bar instead of wooden handle intended for use, held guilty of contributory negligence which barred recovery under federal Employers' Liability Act (U. S. Comp. Stats., sections 8657, 8665).

J. MOTT McDANIEL, ROBERT SMITH and F. J. STEVENS for appellant.

HUNT, NORTHCUTT & BUSH, ROBERT FRIEND, C. S. LANDRUM, WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

P. L. Neal in May, 1923, was employed by appellee at its railroad yards in Ravenna, Kentucky. At the time he was a car repairer, and on the 16th day of May, 1923, while engaged in lifting a loaded car by means of a jack for the purpose of replacing or repairing its springs, was injured and two days thereafter died as a result of it.

This is an action by his personal representative against appellee for damages, and the negligence complained of is that defendant's agents and servants negligently furnished to decedent, an inexperienced workman, improper and defective tools and appliances which resulted in his injury and death. In an amended petition it is charged that decedent while repairing the springs to a car in defendant's yards, which he was directed to do, defendant failed to furnish him reasonably safe appliances, tools and hoisting jacks, bars and other equipment, for the purpose of repairing the car and springs, and that the tools, appliances and equipment so furnished were defective and insufficient, particularly the hoisting jack, which it is said was old, defective and insufficient in all its

parts, and that defendant and its agents knew of such insufficiency and defectiveness, and so knowing ordered and directed decedent to use the same in repairing said car and springs, and that while so operating and carrying out such orders the said appliances caused a heavy steel bar to be thrown with great force against decedent, causing the injuries from which he died; and that defendant negligently failed to instruct and warn him as to the condition of the appliances and of the danger attending their use, and that his injuries and death could have been prevented by defendant if it had instructed and warned decedent of the dangers and defects in such tools and instrumentalities.

In yet another amendment it is charged that defendant was a common carrier and engaged in intra and inter state commerce; and further states that his death was caused and contributed to by defendant in its negligent failure to furnish the decedent a reasonably safe place in which to work.

The answer as amended put in issue the material allegations of the plaintiff's pleadings, and in a separate paragraph contributory negligence is relied upon.

On the trial at the conclusion of the plaintiff's evidence the court directed a verdict for the defendant, and the correctness of that ruling is the only question presented.

The evidence discloses that decedent was 38 years of age and had been engaged as a car repairer for six or seven months by appellant in those yards, and had prior thereto been engaged as a helper, and that he left surviving him a wife and two dependent children; that on the day before a heavy tank car loaded with crude oil came into the yards, and that decedent and his assistant, Elkin, were directed to repair one of the springs on the car; that in doing so it was necessary to use a jack and lift the car some inches so as to take the weight from the broken spring that the same might be replaced. The car was a heavy one and was loaded with crude oil, and the car and its contents together weighed from 85,000 to 100,000 pounds. On the afternoon before the injury decedent and his assistant, Elkin, had started to do this repair work with what is referred to in the evidence as a 40-ton Joyce jack, which the evidence shows was an insufficient instrument with which to lift a heavily loaded car, and unsafe for that purpose. It likewise shows that the company had in its yards two different kinds of 50-ton jacks which

were used in lifting heavily loaded cars; and that it kept on hand wooden handles made to fit in and use in operating those jacks, both 40 and 50 ton ones. It further discloses that on the first afternoon this work was undertaken by decedent and his assistant they were using two jacks, one fifty and one forty ton one, when their superior, Adams, came up to where they were at work and directed Neal not to use the 40-ton jack, but to take it out and get a 50-ton jack, and Adams remained there and supervised the setting of the 50-ton jack. And when they had raised the car about three inches quitting time came and they stopped until next morning. After working a while the next morning another workman took both of the larger jacks they were using, whereupon Neal went and got another 40-ton jack, probably the same one he had been directed the afternoon before not to use, and tried to raise the car again with it. While they were so using the 40-ton jack McDowell, another superior in authority to Neal, came up and directed Neal to get one of the big jacks and put it under the car at a different place from where he was using the smaller jack, and Neal took the smaller jack out from under the car where he had it and in compliance with McDowell's directions to that extent, did place the same under that portion of the car so directed, but in violation of McDowell's orders continued to use the smaller jack, although his fellow workman told him there was a 50-ton jack on the upper platform nearby, which he declined to go and get, saying he would make the smaller one pull it up. In some way they thereafter broke the wooden handle or lever, whereupon Neal went and got an iron claw bar, not intended for use with the jack, and which the evidence shows did not fit into the socket like the wooden handles, but would play backwards and forwards in the socket.

Decedent has a young son who was not employed by the company but who was present and assisting his father and Elkin at the work, and shortly after decedent had thus been a second time directed not to use the smaller jack, and while he was continuing to use the same, although a larger one was near by, they undertook to fit the iron claw bar into the socket of the jack and decedent and his son got up on the claw bar with their weight, while Elkin got under the claw bar and pulled down thereon, and thus they hoped to raise the car sufficiently to put in the new spring. As they pulled and pushed down on this

lever the machinery of the jack would now and then click, which the evidence shows indicated it had caught at that point and was supposed to hold there until further pulled down. This happened twice, and apparently the machinery caught, but the third time when it clicked the boy got off the claw bar and Elkin loosened his hold, and as decedent got off, the claw bar flew out of the socket and struck and injured him.

The evidence is not conclusive as to whether the jack caught and held when it clicked the third time, or whether the machinery in some way gave way and caused the claw bar to fly out of the socket; or whether the loosening of the force being exerted upon the claw bar by the three men caused it to fly out because it did not fit into the socket. Whether, therefore, the machinery of the jack gave way and caused the claw bar to fly out, or whether it flew out when the pressure was withdrawn because it did not fit in the socket cannot be determined from the evidence, but manifestly one of these things brought about the injury.

So that we have a workman injured either because he was using an instrumentality which he had twice been directed by superiors not to use, in the work he was doing, or injured by the use of an instrument not intended for the purpose, when another, expressly made for the purpose, was at hand and could have been procured.

If it be assumed that the jack so used was defective and brought about the injury, still decedent by using the same after being twice directed by his superiors not to use it in that particular work, was guilty of such contributory negligence as alone brought about the injury; and although the action be under the provisions of the federal compensation act, if decedent's negligence was the sole cause of his injury, there can be no recovery. Plainly if the defective condition of the jack brought about the injury there is no culpability upon the part of the company, for twice before the injury it, through its superior officials, ordered and directed him not to use it in attempting to lift that heavy car and its contents, and when he, in direct violation of such orders, continued to use it his own negligence must be deemed to have been the sole cause of his injury and death.

On the other hand, if it be assumed that the claw bar flew out of the socket when the pressure upon it was loosened, because it was not made to and did not fit in the socket, a fact which decedent presumably knew, then like-

wise his own negligence in using an instrumentality not designed for such use when he had at hand others expressly made therefor must be said to have alone brought about his injury.

In the operation of a large railroad yard such as the one in question is shown to have been it is necessary to have central control, and that those in superior authority and having the responsibility, and selected because of their superior knowledge, should have their orders obeyed to the end that the whole machinery of the yards may be efficiently conducted; if, therefore, a subordinate in direct violation of the specific orders of his superior uses an instrumentality which he is informed by that superior is insufficient for and unfitted for the purpose, and continues to use it in violation of such orders, and is injured thereby, it seems to necessarily follow that his own negligence has brought it about and that he alone is responsible. St. Clair's Admr. v. I. C. R. R. Co., 30 R. 1040; L. & N. R. R. Co. v. Scanlon, 23 R. 1401; L. & N. R. R. Co. v. Fox. 20 R. 81; L. & N. R. R. Co. v. Holloway's Admr., 163 Ky 125.

Under any interpretation of the evidence the injury to decedent was brought about solely by his own negligence, and the lower court properly directed the verdict.

Judgment affirmed.