## Hollifield's Administratrix v. Louisville & Nashville Railroad Company.

(Decided March 19, 1929.)

R. L. POPE, J. B. CAMPBELL and V. A. GORDON for appellant.

BLACK, OWENS & BLACK, WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

H. K. Hollifield was killed in Knox county while he was an employe of the Louisville & Nashville Railroad Company. He was a trackwalker. The facts disclosed bv the testimony show that the tracks of the railroad, on his particular section in Knox county, passed through a deep cut, and that there was a heavy grade, making it necessary for the railroad company to keep in constant use a "helper" engine. The grade was south of a point where Hollifield was killed, and this "helper" engine was used to assist heavy trains over the grade at that point. After the train had been assisted over the grade, the "helper" engine was detached and returned to the place where it was kept when not in use. The 1 ailroad line on this section consists of a double track, one known as the west-bound or south track, and the other known as the east-bound or north track. Trains going south traveled over the west-bound track, while trains going

18

north traveled over the east-bound track. As the "helper" engine traveled south, it used the west-bound track and generally in returning it used the east-bound track, but upon the particular morning when Hollifield was killed it did not return on the west-bound track, but was backed over the east-bound track. It was the duty of Hollifield as trackwalker to go over about four miles of track, and he had no particular place where he would be at any particular time. The place where he was killed was in a deep cut. About 600 yards before entering this cut the railroad tracks cross a public road, and between the public road and the cut was a private road crossing the tracks. The proof tends to establish that no signal was given by the backing "helper" engine for the public crossing or the private crossing. It is also shown that it was making little noise as it entered the cut. It is established that at least six other trains had passed through the deep cut immediately prior to the passage of the "helper" engine, and that the cut was so filled with smoke that it was difficult or impossible to see the approach of the "helper" engine. It is also shown that a freight train was passing south on the west-bound track near the time the "helper" engine passed through the cut.

These facts are relied on by appellant as sufficient to show that the death of Hollifield was caused by the negligence of appellee. It is admitted by counsel for appellant that ordinarily a railroad company owes no lookout duty to its trackwalkers or repairmen on the tracks, but it is insisted that the circumstances in this particular case are such as to take it out of the ordinary rule.

No witness saw the accident, and no one had seen Hollifield within 30 minutes of the time he was killed. The evidence does not disclose the manner of his death, other than as it is gathered from the physical facts. He had bruises on the side of his face and head which indicated that he was struck while his side was towards the approaching engine. One of his shoes had been taken off, and one of his gloves had been removed. It is argued by counsel for appellee that these facts show that Hollifield was sitting on the track when he was struck by the engine. There is no evidence which shows where the decedent was, or what he was doing, at the time the train struck him, and under the general rule it is error to submit a case to a jury to speculate or conjecture that a decedent was injured by the negligence of the defendant

rather than by his own negligence, when there is nothing to show what he was doing or where he was at the time he was injured. Unless there is something to take the case out of the general rule, the trial court ruled correctly in sustaining a motion for a directed verdict in behalf of appellee.

It is argued by counsel for the appellant that on the authority of Cincinnati, N. O. & T. P. Railroad Co. v. Owsley, 191 Ky. 664, 231 S. W. 210, the appellant was entitled to have her case submitted to the jury under the doctrine of the last clear chance. It is admitted by counsel that the railroad company was under no duty to maintain a lookout for the trackwalker, and if that is true, the last clear chance doctrine would have no application in this case, as there is no evidence that tends to show that those in charge of the engine discovered his peril at any time. If the railroad company had known that Hollifield was in the cut at the time the ''helper'' engine approached him, there would be merit in the contention of appellant that the doctrine announced in the case of Chesapeake & O. Railway Co. v. Dixon, 212 Ky. 744, 280 S. W. 93, applies. But there is nothing to show that those in charge of the train had any reason to believe that he was at the particular place where he was killed at the time the engine approached that place.

The Owsley case, above mentioned, was not a case between master and servant. The person there injured was sitting in a buggy on a public crossing when a cut of cars was backed against her. In the Dixon case, it was a collision of motorcars, due to the negligence of Dixon who was the foreman. Counsel for appellant also rely upon the case of L. & N. R. Co. v. Philpot's Adm'r, 215 Ky. 682, 286 S. W. 1078. In that case the decedent was not an employe, but was on the track as a licensee. They also rely on the case of Chesapeake & O. Ry. Co. v. Owens' Adm'r, 217 Ky. 707, 290 S. W. 478. In that case Owens was a licensee and was killed at a point where the railroad company owed him a lookout duty.

All the cases relied on by appellant show that the person injured was at a place where the railroad company owed him some duty which it failed to perform. These cases show the general rule governing in such circumstance, but this case is governed by the decisions of the federal courts, as the petition alleges that both decedent and appellee were engaged in interstate commerce at the time of the accident. That allegation was

not traversed. The case of Chesapeake & O. Railway Co. v. Nixon, 271 U. S. 218, 46 S. Ct. 495, 70 L. Ed. 914, is in point. In that case a section foreman used a track velocipede in connection with his work, and while on his way to work he was struck and killed. It was shown that the engineer and fireman were not keeping a lookout, and the controlling question was whether they owed such a duty for the benefit of Nixon. The court said: "If the accident had happened an hour later when the deceased was inspecting the track, we think that there is no doubt that he would be held to have assumed the risk, and to have understood, as he instructed his men, that he must rely upon his own watchfulness and keep out of the way. The railroad company was entitled to expect that self protection from its employes." Hollifield was actually engaged in inspecting the track when he was killed, or at least was engaged in the discharge of his duties in going over the tracks. It was further held in the Nixon case that the duty of the railroad company towards this class of employes was not affected by the duty which it might owe to others.

But we do not find the federal decisions on this point out of harmony with the decisions of our court. In the case of Blankenship's Adm'r v. N. & W. Railway Co., 147 Ky. 260, 143 S. W. 995, it was held that it was not neglect on the part of those in charge of the train to fail to give a signal for one or more crossing in the vicinity where the decedent was killed when it was not pretended that the decedent was on or near the crossing when the engine struck him. In that case the court said: "We have been referred to no case, or authority of any kind, which holds that it is the duty of the company to give a trackwalker notice of the approach of trains. Evidently, from the very nature of the case, it would be unreasonable, and impracticable, as well as unnecessary, to undertake such a duty. His work as a trackwalker necessarily placed Blankenship upon the tracks of the road, and it goes without argument that the duty was imposed upon him to take such reasonable care of himself in the performance of his duties as would prevent him from being injured by a passing train. In failing to do so in this case, he was guilty of the grossest negligence, for which he can blame no one but himself."

In the case of L. & N. R. Co. v. Hyatt's Adm'x, 191 Ky. 85, 229 S. W. 101, this court said: "Section men assume the risk of injury from approaching trains and

must keep a lookout for their own safety.'' The court further held that those in charge of trains are under no duty to give such employes warning of the approach of trains unless it be in an unusual and exceptional case where it is, or ought to be, apparent to trainmen that a section hand is in danger and might be unconscious of that fact.

The acts of negligence relied upon as such by appellant consisted first in the failure of the engine to whistle for the crossing before it entered the cut. Clearly, under the decisions cited, those in charge of the engine were under no such duty, as they did not know that Hollifield was in a place of danger and had no reason to expect that he was. Another alleged act of negligence is that the engine backed on the same track that it had used in going to the point where it was to help the train over the grade, and that it did so without making much noise. We perceive no negligence in this, as the trackwalker certainly would have discovered the engine if he had been careful of his own safety. He had no control over the operation of the engine and he had no right to expect that it would use one track rather than the other upon the showing made by the evidence in this case. It is also urged that it was an act of negligence for the engine to go into this cut when it was filled with smoke. Hollifield must have discovered the smoke, and if it was apt to obscure his view of approaching trains, it was all the more his duty to be observant for his own protection. Where there is no duty, there can be no negligence, and as there was no duty on the part of the trainmen to keep a lookout or to give signals for the benefit of Hollifield, there was no negligence shown by the evidence, and it follows that the court was correct in instructing the jury to return a verdict for appellee.

Judgment affirmed.