## Nelson's Adm'x v. Southern Ry. Co.

May 7, 1946.

Keenon & Odear and C. G. Barrickman for appellant.

Edward P. Humphrey, Karl Malone and R. F. Matthews for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

The action was instituted by appellant, as administratrix of her husband's estate, to recover damages of appellee for the death of her husband, which it is alleged was caused by negligence of appellee. At the conclusion of all the evidence, the Trial Court sustained appellee's motion for a directed verdict in its favor.

Appellant's deceased, Robert Burrus Nelson, was the foreman of a bridge and building crew in the employ of appellee. On the morning of January 13, 1942, Mr. Nelson, accompanied by certain members of his crew and by the Bridge and Building Supervisor of appellee, left Shelbyville on a railroad motor car and proceeded eastwardly toward Lawrenceburg. A freight train operated by appellee left Danville on the same morning at 6:10 a. m., and proceeded westwardly toward Shelbyville. In rounding a curve approximately four miles east of Shelbyville, the motor car and freight train collided. The other occupants of the motor car jumped therefrom and were uninjured; but Mr. Nelson, who was in charge of and operating the motor car, was killed. The car was traveling at a rate of 18 or 20 miles an hour, the train at the rate of 25 miles an hour.

The rules of the railroad, in respect to the operation of motor cars, provide:

"1. Each car will be assigned to the one who is to use it and the user is charged with the responsibility for its proper and safe use, operation, care and maintenance, except that when a conductor is assigned to a car he is responsible for its safe operation. The presence on the car of an officer of the Railway, of any rank, does not relieve the user of his prescribed responsibility but such officer shall reasonably satisfy himself that safe operation is being maintained. When the Superintendent, Assistant Superintendent, Trainmaster or Assistant Train-

master, is on the car, such officer will be in charge and responsible for the safe operation of car.

\* \* \* \* \* \*

"6. A car which cannot be quickly removed from the track must be operated under train orders or under the protection of a flagman with proper signals.

"A car which can be quickly removed from the track by those on the car, may be operated under the responsibility of the user, who must when possible secure written information from the train dispatcher as to location of trains that may affect the movement of the car and secure additional information from time to time, and take such other precautions as may be necessary for safe operation. The information from the train dispatcher does not relieve the user of his responsibility for safe operation.

"7. The user of a car must have in his possession copy of current time table and a standard watch with correct time. He must observe passing trains for signals displayed. He must observe the indication of block signals but they do not relieve him of responsibility for safe operation. He must assign one or more employees, when available, to keep vigilant lookout in both directions for trains, other cars and for persons, vehicles, animals or other obstructions, and assign station and duties to each person to be followed when removing the car. When the view is obstructed by fog or curvature or when other adverse conditions prevail the movement must, if necessary, be protected according to Rule 99 by a flagman with proper signals."

Rule 99, referred to in Rule 7, supra, reads:

"99. When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection, (not less than one-half mile and further on descending grades or when view is obscured) placing two torpedoes, one rail length apart, on the rail on engineman's side of track, and when necessary, in addition, display a lighted fusee.

"When signal 14 (d) or (e) has been given to the flagman and safety to the train will permit, he may return. When the conditions require he will leave the torpedoes and a lighted fusee.

"The front of the train must be protected when necessary by the front brakeman or baggageman, if available, otherwise by the fireman.

"When a train is moving under circumstances in which it may be overtaken by another train, the flagman must take such action as may be necessary to insure full protection. By night, or by day, when the view is obscured, lighted fusees must be thrown off at proper intervals.

"When day signals cannot be plainly seen, owing to weather or other conditions, night signals must also be used.

"Conductors and enginemen are responsible for the protection of their trains.

"Flagman's signals:

"Day signals—A red flag, Torpedoes and Fusees.

"Night signals—A red light, A white light, Torpedoes and Fusees."

It is argued by counsel for appellant that she was entitled to have her case submitted to the jury upon either of two contentions, viz., (1) the engine crew operating the freight train was negligent in failing to sound the whistle for a public crossing near the scene of the accident, and was negligently operating the train at an excessive speed; and (2) the deceased was operating the motor car under the direction of an employee superior to him in authority, and, with the knowledge that the freight train was traveling toward the motor car and would be in the immediate vicinity of the accident at approximately the time the collision occurred, his superior negligently directed him to continue his course. In our opinion, neither contention may be sustained.

The law is well settled in this jurisdiction that the agents and servants in charge of a train owe no duty to an operator or passenger of a motor or hand car, to give warning of the approach of the train. A person in charge of a motor car is required to take notice and anticipate the running of trains; indeed, the evidence shows in this case that the rules of the Company require such precaution to be taken by the operator of a motor car. In Louisville & N. R. Co. v. Elmore's Adm'r, 180

Ky. 733, 181 Ky. 227, 203 S. W. 876, 878, the occupant of a hand car was killed by a train approaching from the rear which collided with the car. It was contended that the engine crew of the train was negligent in failing to signal for a public crossing near the scene of the accident, and that this negligence was the proximate cause of the collision which resulted in the death of Mr. Elmore. In rejecting this contention, the Court said: "What has been said is sufficient to show that those employed upon railroad tracks are required to take notice of and anticipate the running of trains, and that the operators of trains are not required, save perhaps under exceptional and extraordinary circumstances, to anticipate the presence of such employes upon the track, * * *. Since there is no duty to warn such employes of the approach of trains, it would necessarily follow that they would not be entitled to demand that signals of the approach be given, * * *."

We have omitted certain language in the above quotation, because that specific language was withdrawn in the modified opinion. 181 Ky. 227, 203 S. W. 878. To the same effect are Cincinnati, N. O. & T. P. R. Co. v. Harrod's Adm'r, 132 Ky. 445, 115 S. W. 699; Hollifield's Adm'x v. Louisville & N. R. Co., 229 Ky. 16, 16 S. W. 2d 472; and many cases cited in Louisville & N. R. Co. v. Elmore's Adm'r, supra. Some of the cases cited above likewise dispose of the contention that appellee owed appellant's decedent the duty to operate the train at a reasonable speed. But, irrespective of this, the evidence fails to show that the train was being operated at an unsafe or unreasonable speed.

The uncontradicted evidence shows that Mr. Nelson was in complete charge of the motor car; and, although the Supervisor of Bridges and Building was superior to him in the construction and repair of bridges and other building, nevertheless, the former had no authority, and exercised none, to direct Mr. Nelson in the operation of the motor car. The evidence further shows that Mr. Nelson himself obtained the schedule of trains from the Dispatcher at Shelbyville, and this schedule showed the train in question left Danville at 6:10 a. m. that morning. The Supervisor asked Mr. Nelson if he thought he could travel to his destination before the train would meet them, and Mr. Nelson advised him that he could. Thus, the decision to continue the journey was made

by Mr. Nelson himself, and his judgment was not questioned by any of the occupants of the motor car. Under Rule 7, supra, it was the duty of the person in charge of the car, before he proceeded around the curve (which obstructed his view), to assign one of his crew the duty of going forward and ascertaining whether the track was clear. It is insisted that the Bridge and Building Supervisor is in the same category as the Superintendent, Assistant Superintendent, Trainmaster, and Assistant Trainmaster; and, under Rule 1, supra, he was supposed to be in charge of the motor car, and the jury could infer from this fact that he negligently directed Mr. Nelson to pursue the course which resulted in his death. The officers named in Rule 1 are specific ones, and no other officer of the railroad may assume charge of a motor car which is being operated by another employee. The argument that there is no distinction to be made between the Superintendent and the Supervisor is not sound. The superintendent of a division of railroad is the operating head of the division; the bridge and building supervisor is merely in charge of specific work, and has no duty or authority over the operation of trains or motor cars.

Appellant contends that the Court erred in admitting the rules and regulations of the railroad to be read into evidence, because defendant did not plead the rules and their violation in its answer. Under a general plea of negligence, no specific act need be set out in the petition. Wilhelmi v. Berns, 274 Ky. 618, 119 S. W. 2d 625. Likewise, where contributory negligence is pleaded generally, it is unnecessary to specify a particular act. City of Louisville v. Bott's Adm'x, 151 Ky. 578, 152 S. W. 529. Even when contributory negligence has not been pleaded, the defendant, having denied the general allegation of negligence, may show any specific act of negligence on the part of the plaintiff to refute the allegation of the petition.

We think the evidence clearly shows that Mr. Nelson failed to exercise the care and perform the duties imposed upon him; and that this failure alone, without any contributory act of any one else, was the cause of his death. That being true, the Court properly directed the jury to return a verdict in favor of appellee. Neal's Adm'r v. Louisville & N. R. Co., 215 Ky. 102, 284 S. W. 429.

The judgment is affirmed.